Clarence NARCISSE, Plaintiff-Appellant,

v.

**ILLINOIS CENTRAL GULF RAILROAD COMPANY, Defendant-Appellee.**

No. 78–3254.

United States Court of Appeals, Fifth Circuit.

July 3, 1980.

Rehearing Denied Aug. 14, 1980.

---

Robert M. Caswell, Gayle A. Reynolds, New Orleans, La., for plaintiff-appellant.

Dillon, Cambre & Marshall, Gerard M. Dillon, New Orleans, La., for defendant-appellee.

Before AINSWORTH and GEE, Circuit Judges, and HUNTER *, District Judge.

AINSWORTH, Circuit Judge:

Plaintiff Clarence Narcisse filed this FELA[1] suit against his employer, Illinois Central Gulf Railroad Company, for damages for personal injuries arising out of alleged violations by the defendant of the Federal Safety Appliance Acts, 45 U.S.C. §§ 1–43. After a four-day jury trial a verdict was rendered in plaintiff's favor, in answers to special interrogatories, assessing his damages at $175,000. The jury also found that plaintiff was free of contributory negligence. The defendant filed a motion for judgment n. o. v. or alternatively for a new trial. At the hearing on defendant's motion, defendant withdrew its motion for judgment n. o. v. and focused instead on what it perceived as an excessive

---

* District Judge of the Western District of Louisiana, sitting by designation.

1. Federal Employers' Liability Act, 45 U.S.C. §§ 51–60.

damage award.[2] Defendant's motion for a new trial contended that "the Court should grant a partial new trial of the action, limited to the issue of damages." Record on Appeal at 541. The court, however, ordered a new trial as to both liability and damages.[3] At the conclusion of the second trial, the jury again found in favor of plaintiff, setting his damages at $113,000, but also found plaintiff to be 50% contributorily negligent, thus reducing his award to $56,500. Plaintiff then brought this appeal, contending that the trial court abused its discretion in ordering a new trial.

■ We must consider whether the trial court accorded the deference to the first jury's verdict which is required by the seventh amendment to the Constitution.[4] "While this constitutional provision obviously cannot be applied so as to foreclose any scrutiny of a jury's fact-findings, it expresses in clear terms the principle that facts once found by a jury in the context of a civil trial are not to be reweighed and a new trial granted lightly." *Spurlin v. General Motors Corporation*, 528 F.2d 612, 650 (5th Cir. 1976).

■ As a general rule, a district court's grant of a new trial is within the discretion of the court, and is reviewable only for an abuse of discretion. *Montgomery Ward & Co. v. Duncan*, 311 U.S. 243, 61 S.Ct. 189, 85 L.Ed. 147 (1940); *see generally* 6A Moore's Federal Practice ¶ 59.08[5]. Here, the jury, as shown by its verdict, has concluded that there is sufficient evidence to support its determinations as to all issues of the case. In granting the motion for a new trial, the district court necessarily concluded otherwise. Therefore, to safeguard the constitutional right to a jury trial, the grant of a new trial which sets aside a jury verdict must undergo careful appellate scrutiny. *Spurlin v. General Motors Corporation*, 528 F.2d 612, 620 (5th Cir. 1976); *Cities Service Oil Co. v. Launey*, 403 F.2d 537, 539–40 (5th Cir. 1968).

The standard adopted by this Court is that the district court should not grant a new trial motion unless the jury verdict is "at least . . . against the *great* weight of the evidence." *Cities Service Oil Co. v. Launey* [403 F.2d 537, 540 (5th Cir. 1968)] (emphasis in the original). A rule which would permit a court to grant a new trial when the verdict was merely against the "greater weight" of the evidence, this Court said, "would destroy the role of the jury as the principal trier of the facts, and would enable the trial

2. In a Supplemental Memorandum in Support of Motion for New Trial, counsel for defendant made the following statement:

> After reviewing the transcript of the testimony, counsel for defendant has found to be inaccurate the notes, taken at the trial of the action, whereon defendant's argument that there was no evidence to support the jury's finding with respect to the alleged violation of the Safety Appliance Act was based. Candidly conceding that the transcript clearly discloses such evidence, defendant herewith abandons its motion for judgment n. o. v. Therefore, this supplemental memorandum is addressed solely to the motion for a new trial.

Record on Appeal at 540. Defendant contended that the $175,000 awarded by the jury was unreasonable, and suggested that $41,525.67 was "the maximum limit of a reasonable range." *Id.*

3. On appeal, the parties dispute the propriety of ordering a new trial on all issues in the case, rather than a new trial limited to the issue of damages. Narcisse argues that the defendant conceded liability by dropping its motion for judgment n. o. v. and therefore had no right to contest liability a second time. The defendant, in turn, points to a colloquy between the court and counsel for Narcisse where counsel for Narcisse stated that his "gut reaction" was that he preferred a new trial as to all issues, rather than one limited merely to damages. Counsel for Narcisse counters that his initial reaction should not bind him, as he later filed a motion to limit the new trial solely to the issue of damages, which was denied by the trial court. However, on the present record, any grant of a motion for a new trial—either limited to the quantum of damages or general—would constitute an erroneous holding by the district court.

4. U.S.Const. Amend. VII:

> In Suits at common law, where the value in controversy shall exceed twenty dollars, the right of trial by jury shall be preserved, and no fact tried by a jury, shall be otherwise reexamined in any Court of the United States, than according to the rules of the common law.

judge to disregard the jury's verdict at will." *Id.*

*Spurlin v. General Motors Corporation*, 528 F.2d 612, 620 (5th Cir. 1976). The question before this court, therefore, is whether the first jury's verdict was contrary to the *great* weight of the evidence. More specifically, since this verdict was set aside because of its supposed excessive damage award, we must inquire whether the verdict was "*clearly within* the universe of possible awards which are supported by the evidence." *Bonura v. Sea Land Service, Inc.*, 505 F.2d 665, 670 (5th Cir. 1974) (emphasis in original). "[W]e will reverse the grant of a new trial for excessive verdict . . where the quantum of damages found by the jury was *clearly* within 'the maximum limit of a reasonable range.'" *Taylor v. Washington Terminal Company*, 409 F.2d 145, 149 (D.C.Cir.1969) (emphasis in original) (*quoting Graling v. Reilly*, 214 F.Supp. 234, 235 (D.D.C.1963)).

Evidence presented to the jury at the first trial established that plaintiff was injured October 5, 1974 when the knuckle of a railroad car coupling assembly suddenly sprang open, forcibly striking him in the abdomen. The force of the blow threw plaintiff backward into another coupling, and caused extensive abdominal injuries and a contusion to his lower back. He was rushed to Ochsner Foundation Hospital, where Dr. Noel L. Mills, a surgeon at Ochsner Clinic, repaired plaintiff's torn bowels, which necessitated removing 18 inches of small intestine. Prior to the accident plaintiff had been treated for stomach ulcers, but at the time of the accident he had no active ulcers. Following the accident, plaintiff experienced continued abdominal pain, and subsequently developed active duodenal ulcers. Dr. William Patrick McKinnon, a general surgeon at Ochsner Clinic, determined that conservative treatment of the ulcers would be ineffective. Eight months after the accident plaintiff underwent surgery for removal of half of his stomach. Five months later, due to more abdominal complications, plaintiff underwent a third surgery to remove the left and right vagas nerves, a procedure designed to reduce the secretion of acid in the stomach. Because of the extensive surgery performed on his digestive tract, plaintiff must return to the hospital every three months for a physical examination and vitamin shots. Future surgery may also be necessary in this regard. Finally, Dr. Robert E. Ruel, orthopedic surgeon, testified that plaintiff sustained a compression fracture of his back in the accident, resulting in a 10 to 15% permanent impairment of the spine. Dr. Ruel also testified that plaintiff was physically unable to return to his former work at the railroad as of August 9, 1976, nearly two years following the accident, solely because of his back injury.

A strongly disputed question at trial was whether plaintiff's ulcers and subsequent surgeries were causally related to the October 5 accident. Dr. Mills, who performed the first surgery on plaintiff immediately following the accident, testified that he found no active ulcers during the surgery, and that he carefully examined the entire stomach during that procedure. Dr. McKinnon testified that it was more probable than not that the ulcers were caused by the accident, as the stress following the accident and first surgery could precipitate ulcers. Dr. Chesley Hines, a specialist in gastroenterology at Ochsner Clinic, also testified that the accident could have created plaintiff's ulcers. The defendant countered this testimony with evidence of plaintiff's past difficulties with his stomach. Defendant also attempted to impeach Dr. McKinnon's testimony by reading from his deposition, wherein the doctor declined to state whether the ulcers were linked with the industrial accident. The defendant finally produced an orthopedic surgeon who stated that in his opinion plaintiff did not suffer from a compression fracture of the lower back.

Extensive evidence was produced upon which the jury could base its damage award. At trial plaintiff presented evidence that he sustained over $17,000 in unpaid medical expenses, and would have future medical expenses of about $10,000. He estimated his lost wages for the two years following the accident at $35,000, and contended that he should recover $197,000 for future lost wages and impaired earning capacity. He sought $90,000 for disfigure-

ment and past mental pain and suffering, and $42,000 for future mental pain and suffering. The jury considered this evidence and returned an award of $175,000.

In setting aside the jury verdict and granting a new trial, the trial judge noted that he believed the verdict was excessive. The judge stated that he did not believe that plaintiff's ulcers were related to his accident, but were merely a continuation of his previous digestive difficulties. The court also strongly criticized the "ineptitude" of the physicians who had cared for plaintiff. Noting that he did not believe Dr. McKinnon's testimony regarding the causal relationship between the accident and the ulcers, the court concluded that $175,000 was greatly in excess of the damages occasioned by the original accident.

Our recitation of the evidence in this case demonstrates that the first jury's verdict for plaintiff was "*clearly within* the universe of possible awards which are supported by the evidence." *Bonura v. Sea Land Service, Inc.*, 505 F.2d 665, 670 (5th Cir. 1974) (emphasis in original). There is sufficient evidence upon which the jury could conclude that plaintiff's ulcers were caused by his accident. Moreover, in light of plaintiff's medical expenses, lost wages, diminished future earning capacity, disfigurement, pain and suffering, the damages awarded by the jury were within the universe of possible awards which are supported by the evidence. The district court, therefore, erred in granting defendant's motion for a new trial. Although under the evidence the jury could have concluded that plaintiff's ulcers were not related to his accident, or that certain doctors were untruthful in their testimony, or that another amount would better represent the quantum of plaintiff's damages, this possibility in the jury's deliberations does not warrant the granting of a new trial. "Courts are not free to reweigh the evidence and set aside the jury verdict merely because the jury could have drawn different inferences or conclusions or because judges feel that other results are more reasonable." *Tennant v. Peoria & Pekin Union Railway Co.*, 321 U.S. 29, 35, 64 S.Ct. 409, 412, 88 L.Ed. 520 (1944). "[I]t is the function of the jury as the traditional finder of the facts, and not the Court, to weigh conflicting evidence and inferences, and determine the credibility of witnesses." *Boeing Company v. Shipman*, 411 F.2d 365, 375 (5th Cir. 1969) (*en banc*).

The judgment of the district court entered on the second jury verdict is vacated, the order granting the second trial is reversed, and the case is remanded with the direction that judgment be entered in favor of appellant in the sum awarded by the first jury for $175,000. *Taylor v. Washington Terminal Company*, 409 F.2d 145, 149 (D.C.Cir.1969).

VACATED, REVERSED AND REMANDED.

### ON REHEARING
PER CURIAM:

IT IS ORDERED that the petition for rehearing filed in the above entitled and numbered cause be and the same is hereby denied, except however that in the judgment to be entered by the district court, appropriate credit shall be given for the amount heretofore deposited in the registry of the court by the defendant and withdrawn by the plaintiff.