United States Court of Appeals,

Eleventh Circuit.

Nos. 95-9349, 96-8635.

Bonnie E. CARTER, Plaintiff-Appellee,

v.

DECISIONONE CORPORATION, a Delaware corporation, Through its agent for service, C.T. CORPORATION SYSTEM, Defendant-Appellant,

Thomas A. Vassiliades, in his individual capacity as Chief Executive Officer of Bell Atlanta, Inc., et al., Defendants,

Konny Light Mitchell, Movant.

Sept. 18, 1997.

Appeals from the United States District Court for the Northern District of Georgia. (No. 1:91-cv-950-RLV), Robert L.Vining, Judge.

Before BIRCH and CARNES, Circuit Judges, and HENDERSON, Senior Circuit Judge.

PER CURIAM:

The plaintiff-appellee, Bonnie E. Carter, filed this employment discrimination action in several counts against her former employer, Bell Atlantic Business Systems Services, Inc., now known as DecisionOne Corporation. Following a jury trial, the United States District Court for the Northern District of Georgia entered a final judgment in favor of Carter. DecisionOne Corporation filed these appeals from the final judgment and the order disposing of post-judgment motions. We affirm the judgment of the district court.

## I. FACTS AND PROCEDURAL HISTORY

In 1969, Carter was hired as a records clerk by Management Assistance, Inc., a company which provided computer maintenance services. During the 1970's, she received promotions and eventually became a district administrative supervisor and manager, helping to establish operations support offices in the Southeast. In this time period, the company changed its name to Sorbus. In 1982, Sorbus promoted Carter to Depot Manager. As such, she established and managed the new Microcomputer Repair Center in Atlanta. The company was acquired by Bell Atlantic Corporation in 1985 and eventually changed its name to Bell Atlantic Business Systems Services, Inc.

(hereinafter "BABSS" or "the Company"). In a subsequent reorganization, the Depot Manager position was eliminated and Carter was appointed to a sales position.

From March, 1986 until her termination in January, 1990, Carter was a sales representative in the Company's Atlanta District, which included Georgia, Florida and Puerto Rico. Each of the Company's sales personnel was allotted an annual dollar sales quota, and their performance was measured by the percentage of his or her quota each achieved. Throughout the period covered by this litigation, few of the salespeople in the Atlanta District or in the Company's Central Region, of which the Atlanta District was part, consistently reached their sales goals. While she had no prior selling experience, Carter's performance in 1986 was rated "good," even though she attained only 69.9% of her quota. She improved her endeavors in 1987, however, and was recognized for the first sale of a mainframe contract in the Company's Central Region.

Late in 1987, Les Singletary became Carter's immediate supervisor. At that time, the sales force in the Atlanta District was assigned to geographical areas. In 1988, Carter realized more of her annual sales quota than all but two of the sales personnel in the Atlanta District. While he generally thought the quotas were unrealistic, Singletary, under pressure from his supervisor, issued Carter and the other sales persons in a like position a "form improvement" letter. Singletary had several conversations about women in the workforce with Bill Spencer, another manager with the Company. According to Singletary, Spencer told him that women should stay at home with their children but, if they were going to be in sales, it was preferable to have "a nubile young lass" in a sales position because a potential customer might grant her an interview just to take a look at her.[1] Singletary also testified that Spencer told him that, if he were Carter's boss, "I'd fire that bitch."[2]

In January 1989, Spencer replaced Singletary as Branch Sales Manager and became Carter's supervisor. He decided to reassign his Atlanta-based sales representatives to a product-line rather than geographic sales territory. Prior to making these moves, Spencer invited the three male

---

[1]*See* R. 15, p. 174, Testimony of Les Singletary.

[2]*Id.* at 177.

salespeople in the office for drinks after work and allowed them to select the territories that would give them their best chance to meet their quotas. Despite her seniority, Carter was the only salesperson from the office not invited to or informed of this meeting. As a result, she ended up with small and mid-sized computer product lines in Atlanta, the least desirable assignment. After she protested, Spencer changed her territory to include portions of central and south Georgia and Tallahassee, Florida. Subsequently, without telling Carter, Spencer gave the Florida state business in Tallahassee to another employee and assigned a second salesperson to her Georgia territory.

In all, Spencer changed Carter's assignments a total of five times in the first half of 1989. As a result of these changes, Carter made only about 39% of her quota.[3] While most other salespersons in the region also did not meet their quotas, Carter was the only one placed on a corrective plan.[4] In addition, Carter was the only sales representative required by Spencer to sign in and out of the office. Although all the salespeople spent a majority of their time out of the office and left the office early on a regular basis, none but Carter was required to sign in and out of the workplace.[5]

In July, Carter reached 135% of her adjusted quota and, in August, 88% of her quota. Despite this dramatic improvement, Spencer placed Carter on a second corrective plan on October 18, 1989, at which time she was leading the district in monthly quota attainment. She was then told by Spencer that failure to consistently achieve quota would result in her termination. Although other, younger salespeople in the district had also failed in this respect, none was placed on a corrective plan. In October, Carter was the only Atlanta District salesperson to realize her quota.

---

[3]The Company's records indicate that, notwithstanding this performance, Carter's sales for the period ranked her right in the middle of all the salespeople in the Central Region. *See* R. Tab 91, Affidavit of Bonnie E. Carter, Exh. 3 at pp. 11-12.

[4]For the first half of 1989, only five of the Company's 41 salespeople in the Central Region made their quotas. *See* Carter Affidavit, *supra,* n. 1.

[5]*See* R. 15, pp. 74-76, Testimony of Michael Ferguson.

In November, she reached 87% of her sales requirement, the highest end-user performer in the Atlanta District.

Spencer had brought Carter's problems in reaching her quotas to the attention of his supervisor, Bob Donalson, but failed to inform him of Carter's subsequent improvement. Donalson testified that the decision to terminate Carter was made by Spencer in early to mid-December 1989.[6] In December, 1989, Carter took a previously planned two-week vacation, which had been approved by Spencer. Due to the vacation and her failure to close several accounts until after the end of the month, she obtained only a small portion of her sales goal for the month. On January 8, 1990, Spencer told Carter that she was being terminated for failing to meet her quota in December, 1989. At the same meeting, but only after Carter requested it, Spencer gave her the ring she had earned for twenty years of service with the company. At the time, Carter was forty-two years of age. She was replaced by Dick Fitzpatrick, a thirty-nine year old male.

Les Singletary, Carter's former supervisor, testified that in early 1990, shortly after Carter was terminated, Bell Atlantic's president, Tom Vassiliades, stated in a meeting that he had gotten rid of the "old sleazy people" employed by the Company when he began running it.[7] Spencer himself, an older Sorbus employee, was discharged later in 1990 by a younger manager, though he was rehired just two months prior to the trial of this case.

Carter filed this employment discrimination action in April 1991 against the Company and three individuals, Thomas A. Vassiliades, as Chief Executive Officer of Bell Atlantic, Inc.; H. Gene Greer, as President of BABSS; and Bill Spencer, as Branch Sales Manager of BABSS. The complaint alleged that she was dismissed from her employment because of sex discrimination in violation of Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. § 2000e-2; age discrimination in breach of the Age Discrimination in Employment Act of 1967 ("ADEA"), 29

---

[6]*See* R. 16, p. 80, Testimony of Bob Donalson.

[7]*See* R. 15, pp. 186-87, Testimony of Les Singletary.

4

U.S.C. § 621 et seq.; and the maintenance of discriminatory practices and procedures in violation of her due process rights and the Equal Pay Act, 29 U.S.C. § 206(d)(1).[8]

The defendants eventually filed a motion for summary judgment on all of Carter's claims, contending principally that she was terminated for poor work performance. The magistrate judge recommended that the motion be denied with respect to Carter's sex and age discrimination causes of action, finding that there were genuine disputes of fact as to whether the defendants' proffered reason for terminating Carter was a pretext for discrimination. He recommended that the defendants' motion be granted on Carter's claim that certain practices and policies of the defendants had a disparate impact on women. He also recommended summary judgment for the defendants on Carter's due process and Equal Pay Act claims, to the extent they were alleged by her complaint, on the ground that she had abandoned them. The district court adopted the magistrate judge's report and recommendations on these issues. The court also granted the individual defendants' motion for summary judgment, finding that the corporate employer was the only necessary defendant in a Title VII action.

Although Carter was entitled to a jury trial on her age discrimination claim but not on the Title VII sex discrimination cause of action, the parties agreed that bifurcation of the trial was not necessary. The claims were tried to a jury and the court jointly during May and June, 1995. The jury returned a verdict in Carter's favor on the ADEA cause of action, awarding her $173,000.00 in back pay and $100,000.00 in liquidated damages. Subsequently, the district court also found that the Company had intentionally discriminated against Carter on the basis of her sex in violation of Title VII. Concluding that she had only partially mitigated her damages and that she was not entitled

---

[8]Plaintiff's complaint is not a model of clarity. It initially asserts "five distinct causes of action" in ¶ 7: gender discrimination, age discrimination, violation of due process rights, discriminatory application of the Company's policies and procedures in violation of public policy and a conspiracy to apply policies and procedures in a discriminatory fashion and against public policy. In introducing the Causes of Action in Section III, however, it summarizes them as being gender discrimination, age discrimination and violation of due process rights. The complaint then proceeds to enumerate those three plus a fourth, entitled "GENERAL DISCRIMINATION PUBLIC POLICY VIOLATIONS." *See* Complaint at WW 29-32.

to a double recovery, the court awarded Carter an additional $4,617.88 in back pay on her Title VII claim from the date of the jury's verdict to the date of its order. The court also awarded Carter attorneys' fees and costs and post-judgment interest. Defendant filed the first of these appeals, our case No. 95-9349, from that original judgment.

The Company then submitted renewed motions for judgment as a matter of law or for new trial, and Carter filed a motion for prejudgment interest. The district court denied the defendant's renewed motions and granted Carter's motion for a final award of prejudgment interest. The court entered an amended final judgment, and defendant filed the second of these appeals, our case No. 96-6835, from the amended judgment. The Company is *not* seeking review of the district court's ruling in favor of Carter for sex discrimination.

## II. DISCUSSION

A. Liability Issues.

*1. Defendant's Entitlement to Judgment as a Matter of Law.*

The Company first complains that it is entitled to judgment as a matter of law because Carter failed to offer statistical or direct evidence of age discrimination and, consequently, had to rely on the inferential process of establishing a prima facie case as outlined by the Supreme Court in *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973). It contends that she failed to establish a prima facie case because 1) she did not prove that the decisionmakers knew that she was over forty years of age at the time of her discharge; 2) she was not qualified to continue her employment as a sales representative with the company; and 3) she did not show that she was replaced by a significantly younger person. The defendant claims that even if Carter could be said to have made out a prima facie case, it articulated a legitimate, non-discriminatory reason for ending her employment because of her poor job performance. Finally, the Company asserts she failed to prove that its proffered reason for terminating her, poor job performance, was a pretext for unlawful age discrimination.

6

In opposition thereto, the plaintiff urges that she did present more than sufficient evidence to support the jury's verdict in her favor. She contends that she did establish a prima facie case. First, she points out that she was over forty years old when the Company discharged her. Furthermore, while there is no requirement that the decisionmaker in an age discrimination case know that the employee is over forty, she notes a great deal of evidence that the decisionmaker, Bill Spencer, knew that she was over forty. Among other things, he had access to her personnel file and, on the day he informed her she was being terminated, he gave her a ring commemorating her twenty years of service with the company. Also, he discussed the fact that she might file an age discrimination complaint with the other decisionmaker, Bob Donalson.

Carter also argues that she presented evidence that she was qualified for her position of sales representative. She notes that, while defendant's brief compares her sales record to only two other individuals, both of whom outperformed her, there were actually seven sales employees in the Atlanta District at the end of 1989. She alludes to other evidence that she achieved more of her quota for the year than two younger sales representatives who were not disciplined or terminated and that she completed her prima facie case by proving that she was replaced by a man three years younger than her, an age difference this court has found legally significant for ADEA purposes. *See Carter v. City of Miami,* 870 F.2d 578, 582-83 (11th Cir.1989)(prima facie case established when plaintiff 49 years old was replaced by woman 46 years old).

Finally, Carter maintains that she presented sufficient evidence to permit the jury to conclude that the Company's proffered reason for discharging her was a pretext for unlawful age discrimination. This included a statement by Spencer that it was preferable to have a nubile young woman making sales calls because a sales prospect might grant her an interview just to take a look at her and a statement by the Company's president in a meeting shortly after her termination that he had gotten rid of all the "old sleazy people" who used to work for the company. She also cites other evidence that Spencer replaced older employees with younger ones after he became head of the Atlanta office and that he in fact treated two younger female sales representatives better than Carter.

7

For instance, her sales territory was changed five times during 1989, and she was subjected to stricter supervision than similarly situated employees. The jury also heard from several present or former employees of the defendant that they felt that they were treated worse once they turned forty years of age. Finally, according to Carter, she presented substantial evidence that undermined the defendant's explanation of the justification for and timing of its decision to terminate her employment, evidence which strongly suggested that the defendant's stated reason was pretextual.

A district court may enter judgment as a matter of law if a party has been fully heard on an issue and there is no legally sufficient basis for a reasonable jury to find in favor of that party on that issue. When considering such a motion, the court must evaluate all of the evidence, together with any logical inferences therefrom, in the light most favorable to the nonmoving party. *See Beckwith v. City of Daytona Beach Shores,* 58 F.3d 1554, 1560 (11th Cir.1995). In applying this test,

> [i]f the facts and inferences point overwhelmingly in favor of one party, such that reasonable people could not arrive at a contrary verdict, then the motion was properly granted. Conversely, if there is substantial evidence opposed to the motion such that reasonable people, in the exercise of impartial judgment, might reach differing conclusions, then such a motion was due to be denied and the case was properly submitted to the jury.

*Carter v. City of Miami,* 870 F.2d at 581 (footnote omitted). We review a district court's denial of a defendant's renewed motion for judgment as a matter of law *de novo,* applying the same standards as the district court. *Combs v. Plantation Patterns,* 106 F.3d 1519, 1526 (11th Cir.1997).

Considering all the evidence in this case as outlined above and construing that evidence in the light most favorable to Carter, it seems clear that she submitted enough evidence to permit a reasonable jury to conclude that her termination was the result of unlawful age discrimination. For that reason, the district court did not err in denying defendant's motion for judgment as a matter of law.

*2. Defendant's Entitlement to a New Trial.*

In the alternative, the Company contends that the jury's verdict on the age discrimination claim is against the great weight of the evidence and it is entitled to a new trial. It argues that the verdict was based on improperly admitted evidence, most notably a videotaped deposition of Carter's

8

former supervisor, Singletary. It charges that the jury heard "extremely prejudicial and highly inflammatory" testimony concerning Spencer's attitudes about women, which was relevant only to Carter's sex discrimination cause of action which was to be decided by the court.

Carter denies that the verdict was against the great weight of the evidence. She maintains that the district court's evidentiary rulings were not an abuse of discretion. The pretrial order made it clear that Singletary's testimony would be presented by videotaped deposition and be considered as evidence in both the Title VII and ADEA causes of action. Moreover, the judge clearly instructed the jury at least twice that it was to decide only the ADEA claim, and that he would determine the sex discrimination issues. She also notes that it was important for the jury to hear the evidence of sex discrimination in order to be able to assess the strength of the evidence of age discrimination. She says that the defendant cannot now complain that the trial was not bifurcated because it never requested that the district court conduct separate trials and specifically agreed in the pretrial order that bifurcation of the claims was not necessary.

A motion for new trial may only be granted when the jury's verdict is against the great weight of the evidence. *See Simon v. Shearson Lehman Brothers, Inc.,* 895 F.2d 1304, 1310 (11th Cir.1990). We review a district court's denial of a motion for new trial for an abuse of discretion. *Blu-J, Inc. v. Kemper C.P.A. Group,* 916 F.2d 637, 643 (11th Cir.1990).

As we have noted, there was clearly sufficient evidence to support the jury's verdict and, therefore, its verdict cannot be said to be against the great weight of the evidence. Nor did the district court abuse its discretion in admitting Singletary's testimony. The Company now believes that the rather strong evidence of sex discrimination contained in that testimony tainted the jury's consideration of the age discrimination evidence. Yet, it failed to seek a bifurcated trial of the two claims and cannot now be heard to complain that the issues were tried together. *See Response of Carolina, Inc. v. Leasco Response, Inc.,* 537 F.2d 1307, 1325 (5th Cir.1976). Moreover, since the jury heard the evidence on both causes, it was actually in a better position to judge the strength of the evidence supporting the age discrimination claim. If the jury had concluded, as the district court

9

properly instructed, that the defendant discriminated against Carter on the basis of her sex alone, it would have had to return a verdict in the Company's favor on the ADEA cause of action.

The Company also contends that the district court erred in admitting testimony from Carter, Ferguson and Singletary that they believed the defendant discriminated against Carter because of her gender or age. It claims that none of these witnesses was qualified as an expert able to give an opinion about the ultimate issue in the case. As Carter correctly observes, however, the Company waived the objection as to her testimony and that of Ferguson because it failed to object to their statements. *See* Fed.R.Evid. 103(a)(1); *Wilson v. Attaway,* 757 F.2d 1227, 1242 (11th Cir.1985).

Further, Fed.R.Evid. 701 specifically permits lay opinion testimony if those opinions are rationally based on the perception of the witness and helpful to a clear understanding of the witness' testimony. Finally, Fed.R.Evid. 704(a) has abolished the prohibition on opinion testimony concerning the "ultimate issue" in a case. Such opinions are properly admitted if they are based on the personal observations of the witness. *See, e.g., Samples ex rel. Samples v. City of Atlanta,* 846 F.2d 1328, 1334 (11th Cir.1988). Each of these witness' opinions came at the conclusion of their testimony and was based on their perceptions of the reasons for the Company's treatment of Carter. Therefore, the district court did not commit plain error, in admitting this testimony.

The Company also challenges the jury's verdict as erroneous because it was tainted by improper instructions combined with an inadequate general verdict form. It excepts to the district court's causation instruction because it permitted the jury to return a verdict for Carter if it found that age discrimination was only a "determinative factor" in her termination. It also attacks the instructions as defective in that the district court 1) did not charge that, to establish pretext, Carter had to prove that its proffered reason for discharging her was false and that the real reason for her discharge was age discrimination; 2) encouraged the jury to consider whether Carter's discharge was caused by her gender; 3) misled the jury by giving a disparate impact instruction, charging the jury that the discrimination need not be direct or intentional; and 4) repeatedly told the jury that defendant was required to prove that Carter was discharged for good cause. Finally, according to

10

the defendant, the general verdict form did not require the jury to specify which claim they were deciding and which claim would support an award of liquidated damages.

We apply a deferential standard of review to a district court's jury instructions. *Bateman v. Mnemonics, Inc.,* 79 F.3d 1532, 1543 (11th Cir.1996). The trial judge is given wide discretion as to the style and wording employed in the instructions so long as they accurately reflect the law. *Id.* Under this standard, "we examine whether the jury charges, considered as a whole, sufficiently instructed the jury so that the jurors understood the issues and were not misled." *Wilkinson v. Carnival Cruise Lines, Inc.,* 920 F.2d 1560, 1569 (11th Cir.1991). We will reverse the district court because of an erroneous instruction only if we are "left with a substantial and ineradicable doubt as to whether the jury was properly guided in its deliberations." *Johnson v. Bryant,* 671 F.2d 1276, 1280 (11th Cir.1982).

The Company's criticisms of the district court's jury instructions are simply misleading. It focuses on phrases taken out of context. Taken as a whole, the district court's instructions accurately stated the law and properly guided the jurors in their consideration of the case. The jury was repeatedly instructed that, to return a verdict in her favor, it must find that age was a determinative factor in the Company's treatment and ultimate termination of Carter. This is clearly a correct statement of the law. *See, e.g., Rhodes v. Guiberson Oil Tools,* 75 F.3d 989, 993-94 (5th Cir.1996)(en banc). The district court also clearly instructed the jury that it was deciding only the age discrimination claim and that if they concluded that Carter was terminated for some other reason, it must return a verdict in favor of the Company. Thus, the court instructed the jury that "if you should believe ... that her termination was caused by gender discrimination, that is, they discriminated against her because of her sex, then you have to return a verdict for [defendant] because age would not be the cause." The jury instructions, taken as a whole, accurately stated the law and the respective burdens of proof. Finally, the general verdict form was clearly proper because the jury had to decide only a single issue, whether the Company discriminated against

11

Carter in violation of the ADEA. The district court did not err in denying defendant's motion for new trial.

B. Damages Issues.

*1. The Company's Liability for Liquidated Damages.*

The Company contends that, because there is insufficient evidence to support a finding that it willfully violated the ADEA, it is entitled to judgment as a matter of law on the liquidated damages award or, at least, to a new trial on damages. It argues that, on the slim evidence of age discrimination in this case, the award of punitive damages cannot stand. As expected, Carter claims that the award of liquidated damages was proper based on the substantial evidence she offered undermining the defendant's pretextual explanation for her dismissal and on the decisionmakers' knowledge of the applicability of the ADEA.

This court has held that an award of liquidated damages under the ADEA "does not require proof that the employer acted with an evil motive, bad purpose, or intent to violate the ADEA." *Formby v. Farmers and Merchants Bank,* 904 F.2d 627, 631 (11th Cir.1990). In that case, the court held that the jury's rejection of the defendant's pretextual explanation for its adverse employment action combined with the defendant's knowledge that the ADEA prohibited age discrimination sufficed to support an award of punitive damages. *Id.* at 632. Given that those same two factors are also clearly present in this case, the jury's award of such damages will not be disturbed.

*2. Carter's Mitigation of Her Damages.*

The Company also faults the award for the harm she experienced because the evidence shows that Carter did not properly mitigate her damages. It argues that, although she obtained comparable employment with Intellect Computer Services ("Intellect") shortly after being terminated by DecisionOne, she quit that position three months[9] later to accept a consulting position with IBM,

---

[9]This statement is erroneous. Carter testified that she worked for Intellect from February 1, 1990 to May, 1991. *See* R. 14, pp. 77-78, Testimony of Bonnie Carter.

12

for which she was never paid any wages. For this reason, it says that her back pay award on the age discrimination claim must be reduced to $79,677.43 on remand.

According to Carter, the evidence shows that she took reasonable steps to mitigate her damages. She notes that she took the job with Intellect the day after her termination by defendant and worked there for 15 months before resigning to take what appeared to be a better position with IBM. Because of cutbacks and changes at IBM, however, that position never developed as she had hoped. Further, the jury's award of backpay was within the universe of possible awards and should not be altered. She presented evidence that would have supported a jury verdict for backpay of up to $194,743.89. After considering all the evidence concerning mitigation, the jury returned a verdict of $173,700.00 in backpay.

Whether a new trial on damages should be granted is within the sound discretion of the district court, and a refusal to grant a new trial will not be overturned unless there has been a clear abuse of discretion. *Goldstein v. Manhattan Industries, Inc.,* 758 F.2d 1435, 1447-48 (11th Cir.1985). A new trial should be ordered only when the verdict is so excessive as to shock the conscience of the court. *Id.* When the jury's verdict is within the bounds of possible awards supported by the evidence, its award should not be disturbed. *Narcisse v. Illinois Central Gulf Railroad Co.,* 620 F.2d 544 (5th Cir.1980). In this case, the backpay determined by the jury was within the parameters supported by Carter's evidence and was apparently reduced to reflect her failure to entirely mitigate her damages. Under these circumstances, the backpay finding was proper.

*3. Attorneys' Fees.*

Finally, the Company contends that the district court's award of attorneys' fees must be recalculated to reflect Carter's diminished success once the age discrimination damage verdict is set aside. Carter maintains that the district court's grant of attorneys' fees was proper given her success on both the age and sex discrimination claims. She argues that, even if the jury's verdict on her ADEA claim is set aside by this court, the award of fees should not be disturbed because "much of

the evidence on her Title VII and ADEA claims were inseparable, and her counsel was required to explore and develop each aspect of her case." (Red Brief at 49).

Given that we are affirming the judgment in favor of Carter on the ADEA cause of action, there is no basis for changing the district court's judgment of attorneys' fees in this case. Furthermore, it is clear that the district court did not abuse its discretion in calculating the attorneys' fees. The court reduced the "lodestar" amount sought by Carter's attorneys for work through May 19, 1995 by 25% and did not enhance the lodestar amount. Also, for work done since that date, the court awarded only $10,000.00 out of the $35,402.50 sought by counsel. This is within the fair range for the work performed by her attorneys.

Based on the foregoing reasons, the judgment of the district court is AFFIRMED.