[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
JAN 22, 2009
THOMAS K. KAHN
CLERK

_____

No. 07-14778
Non-Argument Calendar

_____

D. C. Docket No. 05-00047-CR-001-1

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

SEVERO SANCHEZ DELATORRE,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Southern District of Georgia

_____

**(January 22, 2009)**

Before HULL, PRYOR and FAY, Circuit Judges.

PER CURIAM:

Severo Sanchez Delatorre appeals his conviction for conspiracy to distribute and possess with intent to distribute 5 or more kilograms of cocaine, in violation of 21 U.S.C. §§ 841(a)(1) and (b)(1)(A) and 846. Delatorre argues that the district court (1) plainly erred in admitting certain expert testimony and (2) committed plain error by improperly commenting on a line of cross-examination questioning. For the reasons set forth below, we affirm.

## I.

At trial, the district court first instructed the jury,

[K]eep in mind that in my position as the law judge in the case I may have to make some admonition or give an instruction or give some direction as to how a particular matter should be handled by a witness or by an attorney during the course of the trial. Those matters have no bearing on what did or did not happen at another time. They are within the sole function of the court and should have no bearing whatsoever on your estimation of the merits of the case.

Willie Brown, a member of the drug-trafficking conspiracy in question, then testified for the government that he purchased cocaine from Delatorre or one of three other suppliers in Florida or Houston, Texas, and sold it to "Kalief" in New York City, Dorothy Hall in Augusta, Georgia, or Jack Tindall in Pittsburgh. Brown used couriers, including Carl Allison, to transport the cocaine by airplane or car to its destination. Specifically regarding Delatorre, Brown arranged the transportation of packages of 3, 5, or 10 kilograms of cocaine supplied by

2

Delatorre on 10 to 15 occasions. Indeed, after September 11, 2001, Delatorre was his "primary source of cocaine." On cross-examination of Brown by Delatorre's counsel, the parties engaged in the following colloquy:

[Delatorre's counsel:] Are you here today to say that the kingpin of your organization is Mr. Delatorre?
[Brown:] I am here to say I bought cocaine from Mr. Delatorre.
[Delatorre's counsel:] Is he the kingpin of the organization? Is he the leader of the organization?
[Brown:] That's who I bought my cocaine from.
[Delatorre's counsel:] Are you saying he's the head of the organization?
[Government:] Objection. He is not saying that.
[District Court:] I don't think that's a fair conclusion, but you may continue to inquire.
[Delatorre's counsel:] Are you saying he's the head man of the organization?
[Brown:] I am saying that he's the man I got the cocaine from.
[Delatorre's counsel:] So, the answer is yes?
[Brown:] Yes, that's who I got the cocaine from.

Allison, one of Brown's couriers and an acquaintance of Delatorre's, testified for the government that, during a conversation with Delatorre sometime between September 2001 and March 2003, Delatorre told him that Brown was mad at Delatorre because Delatorre had provided Brown "twelve keys" that turned out to be "no good."

Hall, Brown's purchaser in Augusta, testified for the government that, on two occasions, she helped transport by plane two kilograms of cocaine from Houston to Atlanta and then Augusta. On both occasions, Brown told her that the

3

cocaine in question came from Delatorre. On another occasion, she traveled to Delatorre's home in Houston to "test" a kilogram of cocaine with Brown and Delatorre. Generally, she considered Delatorre "a supplier to [] Brown."

Patrick Clayton, an agent with the Drug Enforcement Agency, was qualified as a "expert on drug trafficking practices," and testified that his investigation of the cocaine-trafficking conspiracy in question involved "putting a pen register[] on [] Hall's cellular telephone," "put[ting] a pole[-]mounted video camera on a utility pole across from her residence," and "install[ing] a GPS tracking device on [her] vehicle." The pen register revealed telephone calls to Hall from a cellular telephone to which Delatorre was the subscriber. The pole-mounted video camera revealed footage of a vehicle parked in front of Hall's home with a license plate number registered to Brown at an address associated with Delatorre. Eventually, he arrested several of the participants besides Delatorre, and many entered plea agreements and cooperated. At that point, he began to focus on Delatorre and determining the "events" in which Delatorre was involved. He ultimately determined that "[D]elatorre was one of the suppliers for [] Brown and his organization." However, investigating Delatorre was difficult because, in his experience, it was harder to identify drug suppliers than street-level drug dealers like Hall because "[t]he higher you get up on the chain the more insulated you

4

become and the less people you have to deal with," such that an investigator would have fewer inroads. Indeed, "[as to] a major drug supplier like [] Delatorre[,] he is only dealing with a handful of people so it is harder to infiltrate the group at that point."

Finally, The district court instructed the jury,

[Y]ou should not assume from anything I may have said that I have any opinion concerning any of the issues in this case. Except for my instruction to you on the law, you may disregard anything I said during the trial in arriving at your own decision concerning the facts.

Based on this, and other, evidence, the jury convicted Delatorre. The district court sentenced Delatorre to 260 months' imprisonment.

## II. Law & Analysis

As an initial matter, Delatorre admits that he failed to preserve either of his appellate arguments, such that each should be reviewed for plain error. Indeed, when a defendant fails to object before the district court, we will review the matter in question for plain error only. United States v. Tillmon, 195 F.3d 640, 644-45 (11th Cir. 1999). When reviewing for plain error, we must find an (1) an error, (2) that is plain, and (3) that affected the defendant's substantial rights, and only have discretion to correct such an error if it (4) seriously affects the fairness, integrity, or public reputation of the judicial proceedings. United States v. Olano, 507 U.S. 725, 732, 113 S.Ct. 1770, 1776, 123 L.Ed.2d 508 (1993).

5

## A. Expert Testimony

Delatorre does not challenge whether Clayton was properly qualified as an expert or whether the better part of Clayton's expert testimony properly was admitted. Rather, Delatorre only challenges Clayton's statements that Delatorre was a "supplier" and a "major supplier" to Brown's organization, arguing that these statements on the ultimate issue before the jury were inadmissable.

We have held that an expert witness may not testify as to his opinion regarding ultimate legal conclusions. See Montgomery v. Aetna Cas. & Sur. Co., 898 F.2d 1537, 1541 (11th Cir.1990) ("A witness ... may not testify to the legal implications of conduct; the [district] court must be the jury's only source of law."). However, pursuant to Fed.R.Evid. 704(a), "testimony in the form of an opinion or inference otherwise admissible is not objectionable because it embraces an ultimate issue to be decided by the trier of fact."[1] Thus, we have held that an expert witness may testify as to his opinion on an ultimate issue of fact, so long as the opinion is "based on the personal observations of the witness." Carter v. DecisionOne Corp. Through C.T. Corp. System, 122 F.3d 997, 1005 (11th Cir. 1997).

---

[1] Fed.R.Evid. 704(b) provides an exception to this rule with regard to experts testifying on the mental state or condition of a defendant in a criminal case, forbidding them to state whether the defendant did or did not have the mental state in question. This exception is not at issue here.

The district court did not plainly err in admitting the testimony in question. See Tillmon, 195 F.3d at 644-45. Clayton did not give an impermissible opinion on an ultimate issue of law, as he did not testify that Delatorre's conduct was sufficient to convict him of conspiring to possess with intent to distribute cocaine and crack cocaine. See Montgomery, 898 F.2d at 1541. Also, Clayton's opinion on an ultimate issue of fact, namely that Delatorre supplied Brown cocaine, was admissible under the rules of evidence. See Fed.R.Evid.704(a). This opinion was based on observations made by Clayton in the course of the his investigation, the steps of which he described at length. See Carter, 122 F.3d at 1005. Thus, the district court did not commit an error that was plain. See Olano, 507 U.S. at 732, 113 S.Ct. at 1776.

Also, any error committed by the district court in admitting Clayton's testimony that Delatorre was a supplier would not affect substantial rights in light of other evidence presented to establish that Delatorre was a "supplier" and even a "major supplier." See id. Specifically, Brown testified that Delatorre was one of four suppliers, that Brown supplied cocaine in up to 10-kilogram packages approximately 10 to 15 times, and that Delatorre had become his "primary source" of cocaine by 2001. Likewise, Allison testified that Delatorre told him that Delatorre had supplied Brown 12 kilograms of cocaine on one occasion. Finally,

7

Hall testified that Brown told her that Delatorre supplied a certain four kilograms of cocaine. The jury could have convicted Delatorre on this evidence alone. Thus, the district court did not commit an error that affected Delatorre's substantial rights. See Olano, 507 U.S. at 732, 113 S.Ct. at 1776. Accordingly, we affirm as to this issue.

### B. Judge's Comment

Delatorre challenges the district court judge's statement that he did not think it was a "fair conclusion" that Brown was claiming that Delatorre was the kingpin of the organization. Delatorre argues that, in commenting on his counsel's attempt to impeach Brown by demonstrating that his testimony was exaggerated and unbelievable, the district court trespassed on the jury's important function of assessing witness credibility, demonstrated bias toward the government, and impeded Delatorre's ability to cross-examine Brown.

We have held that "[a] district court judge has 'wide discretion in managing the proceedings,' [and] may comment on the evidence, question witnesses, elicit facts not yet adduced or clarify those previously presented, and maintain the pace of a trial by interrupting or cutting off counsel as a matter of discretion." United States v. Day, 405 F.3d 1293, 1297 (11th Cir. 2005) (considering an appellant's argument that he was entitled to a mistrial because the district court found the

8

testimony of a witness to be confusing and suggested to the government the manner in which it might be clarified).  We also have held that "a [district court] judge may comment on evidence so long as he instructs the jury that it is the sole judge of the facts and that it is not bound by his comments," but noted that the district court judge "should make commentary only with great care" because "[j]uries are extremely sensitive to every word and intimation given by the judge." United States v. Jenkins, 901 F.2d 1075, 1082-83 (11th Cir. 1990) (considering an appellant's argument that the district court erred in giving a pre-instruction review of the evidence that included separating it into "hard" evidence and other evidence).  We further have held that the jury is presumed to follow the jury instructions.  Grizzell v. Wainwright, 692 F.2d 722, 726-27 (11th Cir.1982).

The district court did not plainly err in making the comment in question. See Tillmon, 195 F.3d at 644-45.  It was within the district court's discretion to comment, in the course of overruling the government's objection to Delatorre's counsel's attempts to characterize Brown's testimony, that it nevertheless did not think that Brown was describing Delatorre as a kingpin of the organization.  See Day, 405 F.3d at 1297.  This is especially so given that the district court twice instructed the jury that its comments could be disregarded and should not color the jury's consideration of the evidence.  See Jenkins, 901 F.2dat 1082-83; Grizzell,

9

692 F.2d at 726-27. Also, because the district court actually overruled the government's objection and allowed Delatorre's counsel to continue the line of impeachment questioning, it did not demonstrate any bias toward the government or impede Delatorre's right to cross examine witnesses. Thus, the district court did not commit an error that was plain. See Olano, 507 U.S. at 732, 113 S.Ct. at 1776. Also, it is notable that, despite Delatorre's suggestion here on appeal that his counsel was attempting to discredit Brown's testimony as exaggerated, Brown's answers to the questions on cross-examination arguably were helpful to Delatorre. It likewise is notable that, contrary to Delatorre's argument on appeal, the district court judge was not commenting on Brown's credibility, but rather Delatorre's counsel's characterization of Brown's testimony. Thus, the district court did not commit an error that affected Delatorre's substantial rights. See Olano, 507 U.S. at 732, 113 S.Ct. at 1776. Accordingly, we affirm as to this issue.

**AFFIRM.**