Alan **WOODS** and Cara **Woods,**
Plaintiffs-Appellees,

v.

**BURLINGTON NORTHERN RAILROAD COMPANY,** et al., **Defendants-Appellants.**

No. 84–7510.

United States Court of Appeals, Eleventh Circuit.

Aug. 16, 1985.

L. Vastine Stabler, Cabaniss, Johnston, Gardner, Dumas & O'Neil, Kenneth D. Davis, Birmingham, Ala., for defendants-appellants.

Mac Parsons, Hare, Wynn, Newell & Newton, William J. Wynn, Carlton T. Wynn, Francis H. Hare, Jr., Alva C. Caine, Birmingham, Ala., for plaintiffs-appellees.

Before VANCE and JOHNSON, Circuit Judges, and MORGAN, Senior Circuit Judge.

PER CURIAM:

Plaintiffs were injured when the motorcycle on which they were riding overturned. The accident occurred in Pensacola, Florida on Main Street near its intersection with Comandencia. Defendant Burlington's track runs up the center of Main Street at that location. Plaintiffs alleged that the accident was caused by a dangerous defect in the surface of Main Street and that the defect was created and controlled by Burlington. Trial by jury resulted in substantial verdicts and judgments in

plaintiffs' favor. Burlington appeals and makes four contentions of error.

(1)

Burlington first argues that the trial court did not enforce its pretrial order in an even handed manner. In pertinent part, the order provides:

10. *Exhibits.* The parties shall by October 14, 1983, exchange lists describing all writings, recordings, documents, bills, reports, records, photographs and other exhibits (collectively called "exhibits") which they may utilize at trial. Unless specifically agreed between the parties or allowed by the court for good cause shown, the parties shall be precluded from offering as substantive evidence any exhibit not so identified. Except where beyond a party's control or otherwise impracticable (e.g., records from an independent third-party being obtained through subpoena), each party shall make such exhibits available for inspection and copying. Except to the extent written notice to the contrary is filed with the Clerk of the Court within five days after receiving such list, each party shall be deemed to have agreed (for purposes of this litigation only):

. . . .

(g) that each of the listed documents is admissible at trial.

No lists were exchanged. Instead, the parties exchanged the actual exhibits that they proposed to use. No written notices or objections to opposing parties' exhibits were filed with the clerk of the court by either side.

Before the jury was struck the following colloquy took place:

THE COURT: Are there any other preliminary matters? I take it you've exchanged a list of witnesses. Have you exchanged a list of documents?

MR. STABLER [Burlington's attorney]: I guess we have, haven't we?

THE COURT: Well, since I have heard nothing by way of objection to documents, any document that's offered will be received in evidence.

MR. CARLTON WYNN [Plaintiffs' attorney]: We've given you a master sheet on all of the exhibits that we would be talking about and still that—and plus, I think I've shown you every picture that I had and I think—

MR. STABLER: We have exchanged information very freely, I believe.

THE COURT: All right.

Notwithstanding the apparent agreement of the parties and the absence of any pretrial objections by any party the following developed during plaintiffs' examination of their first witness:

MR. WYNN: I offer that as plaintiffs' exhibit number five.

MR. STABLER: Your Honor, I'm going to object to this.

THE COURT: Let me ask you this, Mr. Stabler, was this one of the exhibits listed?

MR. STABLER: We've seen it and objected to it before.

THE COURT: Have you objected to it?

MR. STABLER: Objected to it in the deposition, Your Honor.

THE COURT: Well, the pretrial order required you before the receipt of the list of the exhibits to file an objection with the Court, and it further provided that if no objections were filed with the Court, the exhibit when offered at trial would be received in evidence.

MR. STABLER: Your Honor, I don't want to make a point of it. I didn't receive a list of the exhibits in that form, but I was made aware they were going to offer them and I have been made aware—

MR. WYNN: He has said, and I represent to the Court he has seen every picture I have in my file.

MR. STABLER: I'm not making a point of that, but I was not given a formal list for the proceedings we're talking about here. I'm not making a point of it, Carlton, but I'm explaining why I didn't give a formal response.

MR. WYNN: They gave the pictures themselves, I don't see how they could be

any more accurate than that, if they are talking about numbers a picture might have—

THE COURT: Well, does either side or did either side comply with the pretrial order in providing a list of documents?

MR. WYNN: We did, and he showed me his and I showed him mine.

MR. STABLER: I don't believe you gave me a list.

MR. WYNN: When I showed you the pictures.

MR. STABLER: I agree with you. That's what I am telling the Court. I agree with you.

MR. WYNN: I don't know how else I could give you a better list than the pictures themselves. I didn't say it with regard to these pictures—they are numbered one through fifty—number one—this is number twenty-five, gave everything in my file, gave it to you and said this is what we expect you to use in this case.

THE COURT: All right. The objection is overruled.

Q. All right, sir.

MR. STABLER: Your Honor, you realize he is talking about pictures of another area than in this case, an area he says is comparable to the area in this case?

THE COURT: All I realize is I signed a pretrial order that required that objections to exhibits be filed with the Court prior to trial, so I could pass on them prior to trial and no objections have been filed with the Court and, as I said to ya'll on the record this morning the exhibits which have been identified when offered will be received in evidence because there has been no objection.

The thrust of Burlington's contention is that by *enforcing a portion of its pretrial order* (the requirement that written objections be filed in advance of trial) and *waiving another* (the exchanging of lists of exhibits), the district court unfairly allowed into evidence inadmissible exhibits [1] that were highly prejudicial.

As we will briefly note in part 2 *infra*, we conclude that the exhibits were admissible. Even if we concluded to the contrary, however, we would not accept that the trial court's handling of the matter was unfair or erroneous.

■ This court has recognized that trial courts have wide latitude in controlling pretrial procedures. Enforcement of pretrial orders in matters such as the one now before the court is within the discretion of the district court. *See Typographical Service, Inc. v. Itek Corp.*, 721 F.2d 1317, 1319 (11th Cir.1983); *Fabrica Italiana Lavorazione Materie Organiche, S.A.S. v. Kaiser Aluminum & Chemical Corp.*, 684 F.2d 776, 780–81 (11th Cir.1982); *National Distillers & Chemical Co. v. Brad's Machine Products*, 666 F.2d 492, 497 (11th Cir.1982). The trial judge's rulings in this area "must not be disturbed unless it is demonstrated that he has clearly abused the broad discretion vested in him by Rule 16." *National Distillers*, 666 F.2d at 497 (quoting *Davis v. Duplantis*, 448 F.2d 918, 921 (5th Cir. 1971)).

■ In this case the trial court treated the parties' exchange of the actual exhibits as substantial compliance with the pre-trial order's requirement that lists of the exhibits be exchanged. It allowed into evidence the exchanged exhibits and did not allow the plaintiffs to introduce exhibits that had not been exchanged.

Compliance with prescribed pretrial procedures is of increasing importance to the effective administration of justice in the face of burgeoning case loads. Trial judges and opposing litigants have a right to expect that the court's orders will be carefully followed in order that the business of the court may be handled expeditiously and fairly. Appellate courts are empowered, of course, to provide relief

---

**1.** The exhibits about which Burlington complains are not specifically identified in its brief. We assume, as did the writer of appellees' brief, that they were five photographs of Main Street and a letter dated April 8, 1981, from the Pensacola Streets/Traffic Superintendent to Burlington.

from arbitrary and unreasonable application of rules. Such, however, is not the case before us. This was a reasonable requirement with an obvious and important purpose, which in our view was applied in a reasonable manner. Counsel cannot show cavalier disregard for a district court's pretrial requirements and reasonably expect this court to extricate them from an unhappy aftermath.

(2)

Burlington next argues that the district court erred in admitting the exhibits [2] into evidence and in allowing a defense witness to be impeached with questions concerning other accidents that allegedly occurred in the same vicinity. In connection with the exhibits, there is an overlap between this contention and the first. Our ruling with respect to the first contention disposes of the second. It is appropriate to note, however, that in our view the exhibits were both relevant and admissible. Plaintiffs' theory, which had ample evidentiary support, was that Burlington had allowed the condition of the surface of Main Street to deteriorate all along the three blocks that its tracks ran onto and up the center of the street. Burlington disputed this generalized state of deterioration. The photographs simply show the condition of the street in that area. The letter, which was supplemented by the testimony of the street superintendent, showed that he complained to the railroad about the street condition over a year before the accident.

■ The admissibility of evidence is another aspect of a trial that is committed to the discretion of the trial court. The trial court should be reversed only when appellant can show that it abused its broad discretion and that the ruling adversely affected appellant's substantial rights. *Murphy v. City of Flagler Beach*, 761 F.2d 622, 626 (11th Cir.1985); *Pesaplastic, C.A. v. Cincinnati Milacron Co.*, 750 F.2d 1516, 1524 (11th Cir.1985); *Loughan v. Firestone Tire & Rubber Co.*, 749 F.2d 1519, 1521,

1524 (11th Cir.1985). Even aside from Burlington's noncompliance with the pretrial order, we would reject a contention that the district court abused its discretion in admitting this evidence because the exhibits fairly supported plaintiffs' case and were relevant to the issues in controversy.

■ Burlington next complains that the trial court abused its discretion by allowing plaintiffs' counsel to cross-examine a defense witness with questions concerning other accidents. Burlington does not identify the particular ruling on which its complaint is based. From our reading of the transcript, however, we find that defendant's roadmaster, Padley, testified that he inspected the track in Pensacola about once a month. He testified on direct examination about the condition of the track and street in the area where the accident occurred and indicated that it was safe for traffic. He was questioned about the photographic exhibits without any limitations as to a precise area. On cross examination, he denied that the track was in a hazardous condition in August 1982. He was then asked whether he was familiar with other specific accidents that had occurred shortly before or shortly after plaintiffs' accident. The questions concerned accidents that were said to have occurred at locations in Main Street along the Burlington track but not at the precise location where plaintiffs were injured. The witness denied any knowledge of the accidents, and no other evidence concerning them was introduced.

A fair interpretation of the witnesses' direct testimony was that the Burlington track in this area was maintained in a condition that was not hazardous. It was not an abuse of discretion to allow, as impeachment, questions concerning other accidents that were said to have occurred at about the same time and within the same area.

(3)

Burlington complains about several statements made by opposing counsel in

2. For purposes of our decision we assume that Burlington properly preserved the claimed errors.

closing argument. We have reviewed each of the claims in context and have determined that reversible error has not been demonstrated.

■ One statement by plaintiffs' counsel, however, deserves specific attention: "[I]t's improper for us to say, put yourself in the shoes of the plaintiff...." This is substantially the same variation of the "golden rule" argument that was condemned by the fifth circuit in *Loose v. Offshore Navigation, Inc.*, 670 F.2d 493, 496–97 (5th Cir.1982). The straight golden rule argument—"put yourself in the shoes of my client,"—clearly has been banned by binding precedent. *See Burrage v. Harrell*, 537 F.2d 837, 839 (5th Cir.1976); *Har-Pen Truck Lines, Inc. v. Mills*, 378 F.2d 705, 714–15 (5th Cir.1967). This reversed version is calculated to evoke precisely the same improper emotional response. If made by the prevailing party this improper argument ordinarily will result in reversal. It does not in this case only because Burlington did not object to it.

■ Our general rule is that a timely objection is necessary to bring to the trial court's attention alleged errors in the conduct of a trial. *Jenkins v. General Motors Corp.*, 446 F.2d 377, 382–83 (5th Cir.1971), *cert. denied*, 405 U.S. 922, 92 S.Ct. 959, 30 L.Ed.2d 793 (1972). The rule is applied to argument of counsel, even argument found to be inflammatory, prejudicial and improper. *Brown & Root, Inc. v. Big Rock Corp.*, 383 F.2d 662, 666–67 (5th Cir.1967). The rule is grounded on sound policy. First, the requirement fosters judicial economy. By bringing an error to the trial judge's attention, the court has a chance to correct it on the spot. Requiring timely objection prohibits counsel from "sandbagging" the court by remaining silent and then, if the result is unsatisfactory, claiming error. *See Sanders v. Chatham County Board of Commissioners*, 728 F.2d 1367, 1368 (11th Cir.1984). Second, there are a number of good reasons why skilled trial counsel may make a tactical decision not to object to improper argument: (1) an argument that looks highly improper in a cold record may strike counsel as being wholly lacking in effect; (2) because of the "chemistry" of the courtroom counsel may think that the improper argument may offend and in effect backfire; and (3) the improper argument may open the door to a response that will be of more value than a sustained objection.

We retain the authority to review for plain error but exercise of that authority is seldom justified in reviewing argument of counsel in a civil case. We conclude it is not justified here.

(4)

■ Burlington finally contends that the verdict is so excessive as to "shock the judicial conscience," the standard reaffirmed by this court in *Jackson v. Magnolia Brokerage Co.*, 742 F.2d 1305, 1306–07 (11th Cir.1984). The jury could have found from the evidence that plaintiff Alan Woods sustained painful and serious injuries, that required two surgical operations, that resulted in permanent pain and disability and that will result in a permanent reduction in earnings. Our system guarantees that, when demanded, evaluation of the damages of a prevailing party will be by a jury. Under all of the circumstances in this case the generosity of the jury's verdict may be surprising. A surprisingly large verdict, however, is not sufficient justification for an appellate court's substitution of its evaluation of plaintiffs' damages for that of a jury. The verdict was not so out of proportion to the injuries sustained by the plaintiff as to shock the judicial conscience.

AFFIRMED.