[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
MAY 26, 2006
THOMAS K. KAHN
CLERK

_____

No. 04-16319

_____

D. C. Docket No. 99-01495-CV-WMH

KENRICK CHRISTOPHER,

Plaintiff-Appellant,

versus

STATE OF FLORIDA, et al.,

Defendants,

BARRY TIERNEY, individually,
JOSE HERNANDEZ, individually,

Defendants-Appellees.

_____

Appeal from the United States District Court
for the Southern District of Florida

_____

(May 26, 2006)

Before EDMONDSON, Chief Judge, BARKETT, Circuit Judge, and HUNT[*], District Judge.

EDMONDSON, Chief Judge:

Plaintiff Kenrick Christopher appeals the district court's granting judgment as a matter of law to Sgt. Barry Tierney ("Tierney") and a new trial to Trooper Jose Hernandez ("Hernandez"), following a five-day jury trial in which both defendants were found liable under 42 U.S.C. § 1983 for using excessive force against Plaintiff. We reverse the grant of judgment as a matter of law to Defendant Tierney but conclude that he is entitled to a new trial. We affirm the grant of a new trial to Defendant Hernandez.

## I. Background

In 1998, the Florida Highway Patrol Tactical Response Team was ordered to secure the residence in which Plaintiff Kenrick Christopher lived so that the Opa-Locka Police Department could execute a search warrant for drugs. The warrant named the owner of the house, but not Plaintiff. While securing the house, three troopers --Tierney, Hernandez, and Sgt. James Durden ("Durden")

---

[*] Honorable Willis B. Hunt, Jr., United States District Judge for the Northern District of Georgia, sitting by designation.

2

-- charged into Plaintiff's bedroom.

Plaintiff testified he was alone in the room, lying on his bed, when two masked men dressed entirely in black ran in. The men had guns. Plaintiff was told to get off the bed but did not immediately comply. One of the officers used his gun to push Plaintiff off the bed. Plaintiff landed face down. The officer then put his knee in Plaintiff's back and pulled his right arm behind him until Plaintiff felt his shoulder snap. When Plaintiff asked what the officer was doing, the officer's partner told Plaintiff to shut up. Plaintiff was then hit in the back of the head with a hard object. Plaintiff felt a warm tingling. After he was cuffed, two officers ordered Plaintiff to stand. When he replied that he could not stand, the officers accused him of lying and carried him outside.

In contrast, Defendant Tierney -- the first officer to enter the room -- testified that, as he was pushing aside the doorway curtain, a suspect other than Plaintiff grabbed the front of his gun and pulled it forward. Tierney fell on top of the man (not Plaintiff). After a short struggle, Tierney secured and handcuffed the man. Tierney claims his attention was entirely occupied by this suspect, he did not touch Plaintiff or say anything to him, and he does not know what Hernandez or Durden said or did while in the room.

3

Defendant Hernandez testified that he entered the room after Tierney, saw Plaintiff standing near the bed, and yelled "get down." Plaintiff did exactly as told. Hernandez testified he did not recall touching Plaintiff and that he did not remember who handcuffed Plaintiff, although it would have been normal procedure for Plaintiff to have been handcuffed. He has no recollection of what the other troopers said or did while in the room.

Durden testified that Tierney and Hernandez were briefly held up at the entrance to the room. Durden entered the room after them and immediately stepped up onto a mattress. Durden noticed two black male suspects on the ground directly in front of him, between the bed and doorway. His attention then turned to a curtained doorway leading to a bathroom. Durden claims he never touched the suspects and has no memory of how Plaintiff was handcuffed or what the other troopers said or did while in the room.

After being carried outside, Plaintiff was twice checked on by a Miami-Dade Fire Rescue crew summoned by the troopers. Although tests did not indicate Plaintiff required transport, an ambulance was eventually called. During transport, Plaintiff told the EMT he had been assaulted by police. At the hospital, doctors discovered a blood vessel had ruptured in Plaintiff's brain. He underwent brain surgery, spent three weeks in the hospital, and is now permanently disabled.

4

Plaintiff was born with an arteriovenous malformation ("AVM"), which makes the brain's vascular structures susceptible to rupture. At trial, Plaintiff called Dr. Lustgarten, an expert neurologist and neurosurgeon, who testified that the probability of an AVM spontaneously bleeding was 1% per year and that the rupture of Plaintiff's AVM was more likely than not caused by trauma to the back of the head. Defendants called Dr. Barredo, a neurologist who testified that the risk of spontaneous rupture was 2-3% per year, that head trauma is not a known cause of AVM rupture, that the rupture was most likely caused by heightened blood pressure attributable to surprise or apprehension, and that ruptures may cause a pain sensation similar to being hit. Dr. Hamilton, Plaintiff's treating neuropsychologist, testified that Plaintiff's memory was not intact when he arrived at the hospital, and that his memories were likely reconstructed by others. Plaintiff had no bruising on the back of his head, but doctors testified that a hit with a blunt object would not necessarily cause bruising.

Before trial the district court granted summary judgment against "Plaintiff's claims that the Officers used excessive force in rolling him off of the bed; handcuffing him; and dragging him to the livingroom." The court concluded that "other than the alleged blow to the head, the acts of which the Officers are accused" involved de minimis force and "even if the force used by the officers was

not de minimis, the Officers would be entitled to qualified immunity with regard to these claims." The only potential ground for liability remaining at the time of trial was that an officer intentionally hit Plaintiff in the back of the head. The jury found both Defendants Tierney and Hernandez liable for use of excessive force and awarded Plaintiff $6.725 million in damages. The district court then granted judgment as a matter of law in favor of Tierney and granted Hernandez a new trial.

## II. Discussion

### A. Judgment as a Matter of Law

We review the grant of judgment as a matter of law ("JMOL") de novo , applying the same standard as the district court. Picketed v. Tyson Fresh Meats, Inc., 420 F.3d 1272, 1278 (11th Cir. 2005). JMOL is appropriate when a plaintiff presents no legally sufficient evidentiary basis for a reasonable jury to find for him on a material element of his cause of action. Id. But if there is substantial conflict in the evidence, such that "reasonable and fair-minded persons in the exercise of impartial judgment might reach different conclusions, the motion must be denied." Walker v. NationsBank of Florida N.A., 53 F.3d 1548, 1555 (11th Cir. 1995).

The district court erred by granting judgment as a matter of law for Tierney. Tierney claimed that he did not touch Plaintiff and that Tierney's attention was entirely focused on subduing another suspect who grabbed his gun as Tierney entered the room. But the jury was not required to believe Tierney, whose testimony was directly contradicted by Plaintiff's testimony that he was alone in the room when the officers entered. Tierney also did not identify the supposed suspect or explain what happened to him after Tierney handcuffed him and guided him out of the room.[1] Because sufficient conflict existed in the evidence presented to permit rational jurors to reach differing decisions on whether Tierney hit Plaintiff, the grant of judgment as a matter of law was incorrect.

## B. New Trial Order

Following the jury trial, Tierney and Hernandez jointly moved for judgment as a matter of law "or for a new trial on all issues under Fed. R. Civ. P. 59." The court granted a new trial for Hernandez and judgment as a matter of law for Tierney, but the court did not rule on Tierney's motion for new trial as required by

---

[1]Even if the jury believed Tierney's testimony that he was pulled to the floor by a second suspect, the room was sufficiently small -- six feet by eight feet, mostly occupied by a bed -- that Officer Tierney could have reached over and hit Plaintiff while Plaintiff was being handcuffed by Hernandez.

7

Fed. R. Civ. P. 50(c)(1).[2]  Tierney did not press the trial court to rule conditionally

on the new trial motion after it granted JMOL, but he did specifically request that

we rule on the motion.  Defendants were jointly sued, tried, and found liable; the

grounds on which the district court granted a new trial for Hernandez are equally

applicable to Tierney.  Under the circumstances, we will accept that the district

court would have granted Tierney a new trial based on the same grounds as for

Hernandez if the court had made the required conditional ruling.[3]

    We review the trial court's grant of a new trial for abuse of discretion.

McWhorter v. City of Birmingham, 906 F.2d 674, 677 (11th Cir. 1990).  In this

---

[2]Fed. R. Civ. P. 50(c)(1) provides: "If the renewed motion for judgment as a matter of law is granted, the court shall also rule on the motion for a new trial, if any, by determining whether it should be granted if the judgment is thereafter vacated or reversed, and shall specify the grounds for granting or denying the motion for new trial."

[3]Where a Defendant fails to pursue his motion for a new trial with the district court after the court grants JMOL without making the alternative ruling required by Fed. R. Civ. P. 50(c)(1), and the Defendant fails to argue for a new trial ruling on appeal, this Court has treated the issue as abandoned.  Edwards v. Bd. of Regents of Univ. of Ga., 2 F.3d 382, 384 n.6 (11th Cir. 1993).  This Court has not previously considered the proper course where a party does not press the issue with the district court that failed to make a conditional ruling, but preserves the issue on appeal.  Other federal courts are in disagreement on the proper course to take in these circumstances.  Compare Rhone Poulenc Rorer Pharmaceuticals, Inc. v. Newman Glass Works, 112 F.3d 695, 698-99 (3d Cir. 1997) (remanding to district court for a ruling on new trial motion); Acosta v. City and County of San Francisco, 83 F.3d 1143, 1149 (9th Cir. 1996) (stating that appeals court has discretion to decide the new trial motion on its own or remand to the district court); Isaksen v. Vermont Castings, Inc., 825 F.2d 1158, 1165 (7th Cir. 1987) (remanding for ruling on new trial motion); Nodak Oil Co. v. Mobil Oil Corp., 526 F.2d 798, 798 (8th Cir. 1975)(remanding for a ruling on new trial motion while retaining jurisdiction). Our decision to accept that the district court would have conditionally granted a new trial is limited to the circumstances now before us: the trial court granted a new trial to Defendant Hernandez on grounds equally applicable to Tierney. "Concerning similars the judgment is the same."  S.S. Peloubet, A Collection of Legal Maxims in Law and Equity, ¶419 (Rothman 1985) (1884) ("De similibus idem est judicium").

8

case, the district court based its decision to grant a new trial on several factors.

First, during closing argument, Plaintiff's counsel ignored the court's earlier grant of qualified immunity to Defendants for all alleged acts other than an intentional blow to the head by -- in rebuttal at the tail of the trial -- injecting this argument:

> "[S]omehow this whole case has turned into a singular blow to the head . . . when we all know that if they assaulted him and it was that assault that raised his blood pressure, as they would like you to believe it was a blood pressure raise, then they are responsible. This is not a case about a singular blow to the head. This is a case about explaining how someone who didn't have a finger put on him came out in the condition he came out in, which they cannot explain and refuse to explain.
> . . .
> "[T]hey are taking an isolated situation and trying to attack a singular portion of this case and making it seem that we have to prove a specific blow to a specific area of the body and that is not true. We simply have to prove to you that he was the victim of unreasonable force, and we know that the standard is that if he didn't resist and if he didn't obstruct and if he didn't disobey and if he didn't interfere, they are not allowed to strike him or shake him or in any way physically do anything improper to him."

(R. 347 at 703-04.) Defense counsel did not object to this argument at trial. But "where the interest of substantial justice is at stake, improper argument may be the basis for a new trial even if no objection has been raised." McWhorter, 906 F.2d at 677; See Fed. R. Civ. P. 61 (setting out substantial justice standard).[4]

---

[4]We stress that the case before us is not one in which we are asked to reverse a denial of a motion for new trial and in which the grounds for the new trial motion were not objected to during the

Plaintiff's counsel argues the quoted portion of its closing argument did not clearly violate the qualified immunity order, because when read in context, it -- he says -- meant only that this was a case about credibility: all of Plaintiff's injuries and allegations -- not just the blow to the head -- were relevant to the credibility of Defendants who denied having ever touched Plaintiff. But Plaintiff's counsel's comment that "they are . . . making it seem that we have to prove a specific blow to a specific area of the body and that is not true" was a clear invitation to the jury to hold Defendants liable based on conduct other than an intentional blow to the head, in direct contravention of the court's earlier qualified immunity order.[5] The

---

underlying trial. Compare <u>Brough v. Imperial Sterling Ltd.</u>, 297 F.3d 1172, 1178 (11th Cir. 2002) (appellate court applying plain error review to counsel's closing argument to determine if the district court erred in denying a motion for new trial where the motion was based on argument to which there was no objection during trial); compare also <u>Oxford Furniture Cos. v. Drexel Heritage Furnishings, Inc.</u>, 984 F.2d 1118, 1128 (11th Cir. 1993) (appellate court not reviewing denial of new trial by district court but reviewing the district court's judgment on the jury verdict and applying plain error review to determine whether district court's judgment must be vacated based on closing argument not objected to during trial); <u>Woods v. Burlington Northern R.R. Co.</u>, 768 F.2d 1287, 1292 (11th Cir. 1985), rev'd on other grounds, 107 S.Ct. 967 (1987) (same). Because granting motions for new trial touches on the trial court's traditional equity power to prevent injustice and the trial judge's duty to guard the integrity and fairness of the proceedings before him, an appellate court may uphold a district court's discretionary grant of new trial without deciding whether the case contains the kind of prejudicial, plain error that would compel the appellate court to set aside a judgment on direct appeal if a motion for new trial had not been granted.

[5]The district court's previous order granting partial summary judgment included these words:
The Court finds that under the circumstances of this case, the Officer's alleged actions, with the possible exception of the blow to the Plaintiff's head, would not inevitably lead every reasonable officer in the Defendants' position to conclude the force was unlawful. . . . Therefore, even if the force used by the officers was not de minimis, the Officers would be entitled to qualified immunity with regard to these claims.
(R. 259 at 8.)

10

statement that the jury could find Defendants liable if they believed Plaintiff's

injuries were caused by a rise in blood pressure, which in turn was caused by

Defendants' conduct, was also misleading. Plaintiff's blood pressure may have

spiked due to surprise or fear caused by Defendants charging into the bedroom,

pointing guns at Plaintiff, forcing him to the ground, and handcuffing him. But the

district court had already granted Defendants qualified immunity for this conduct,

ruling that it was not clearly excessive.[6] As the case was to be tried, given the

district court order, Defendants could only be held liable for injuries resulting from

a sudden rise in blood pressure if it was caused by the intentional blow to the head,

rather than Defendant's other acts.[7]

Plaintiff's counsel's improper closing argument prejudiced the substantial

rights of Defendants by taking away from Defendants the benefits of the partial

---

[6]On appeal Plaintiff does not challenge this grant of immunity.

[7]The district court said these things about the pertinent argument:
> Plaintiff's counsel's argument in rebuttal stating that "[t]his is not a case about a singular blow to the head" (Tr. 704) was contrary to the Court's pretrial grant of qualified immunity to Defendants for any actions other than an alleged blow to the head. The Court made clear in its Summary Judgment Order that the following actions: rolling him off the bed onto the floor, hurting him while handcuffing him, and dragging him from the bedroom to the living room appeared to be reasonable under the circumstances and therefore entitled to qualified immunity. This case was designed to answer the sole question of whether there was a blow to the Plaintiff's head inflicted by the Defendants. Therefore, because the Defendants were granted immunity from suit for any claims of excessive force other than a blow to the head, the foregoing remark and others of its kind by Plaintiff's counsel were fundamentally erroneous and warrant a new trial.

(R. 362 at 2.)

summary judgment they had won before trial and by incorrectly expanding the

grounds for liability at trial to include grounds ruled out by the court.[8] Especially

in the light of the district court's preexisting immunity order granting Defendants

partial summary judgment, we believe Plaintiff's counsel's closing argument about

liability for conduct other than an intentional blow to the head warrants, by itself, a

new trial. The district court's grant of a new trial served to protect the rights of

Defendants and to <u>vindicate the authority of the court</u>. <u>See</u> <u>McWhorter</u>, 906 F.2d

at 677 (concluding that a new trial was in the interest of substantial justice where

counsel referred to an exhibit not in evidence during closing argument and argued

a theory the district court had specifically prohibited in a motion <u>in limine</u>). We

---

[8]By the way, no specifically curative instruction was given to the jury to disregard Plaintiff's improper argument. About a blow to the head, in some fifteen pages of regular jury instructions was only one sentence: "Plaintiff claims that one of the Defendants struck him on the head, causing injury." But the jury instructions on the law that was to be applied to the case -- including the definition of unreasonable force and the elements the jury must find to hold Defendants liable -- did not express that liability had to be tied to Plaintiff's establishing by evidence that he had suffered a blow to the head. The sentence we have quoted is not one that commands the jury to do or not to do something; it merely describes what Plaintiff was claiming -- a description that the jury would recognize as incomplete in the light of the closing argument it had just heard that expanded the basis for liability claimed by the Plaintiff. We easily conclude that an objectively reasonable trial judge could determine that the jury instructions, including this single sentence, did not cure the harm caused by Plaintiff's counsel's expansive argument on grounds for liability. We do not suggest (much less decide) that even a textbook-perfect, specific curative instruction, had one been given, would have deprived the district court in this case of its authority to grant a discretionary new trial in the light of Plaintiff's argument made contrary to the district court's pretrial grant of qualified immunity. In the hypothetical case with a strong curative instruction, the district court, we suppose, would not be absolutely obliged to find that its curative instruction was, in fact, effective to cure the harm done by the unfair argument.

12

therefore cannot say that the district court abused its discretion in determining that the interests of substantial justice warranted a new trial.

Other grounds identified by the district court buttress the decision to grant Defendants a new trial. For example, Plaintiff's counsel made a series of statements that arguably implied to the jury that the State of Florida was underwriting the costs of defense. The court sustained objections to these comments, gave a curative instruction, and threatened to hold Plaintiff's counsel in contempt, to which he responded in the jury's presence, "Well, so be it, sir. I'm representing a client whose life is on the line." Also, during closing argument, Plaintiff's counsel twice made references to "police brutality" being caused by "the differences of people."[9] Both times the trial court overruled Defendant's objections, but the court later concluded the statements were "calculated to make the jurors believe this was another case of racially motivated police brutality."[10]

The trial court also determined that the jury's award of $4 million in non-economic damages, $225,000 in past medical expenses, and $2.5 million for future medical and custodial expenses was manifestly excessive and swayed by passion. The award for future expenses was 40% higher than the highest number

_____

[9]This statement was part of Plaintiff's counsel's response to the defense argument that Plaintiff had failed to explain why police would beat an unresisting innocent man.

[10]The record reflects that Plaintiff is black and that Tierney, Hernandez, and Durden are not black.

13

testified to by Plaintiff's sole witness on the subject, and the award for past medical expenses was nearly twice the $116,887 supported by the evidence. "[A] grossly excessive award may warrant a finding that the jury's verdict was swayed by passion and prejudice . . . thus necessitating a new trial," but "a new trial should only be ordered where the verdict is so excessive as to shock the conscience of the court." Simon v. Shearson Lehman Bros., Inc., 895 F.2d 1304, 1310 (11th Cir. 1990). The gross excessiveness of these awards casts doubt on the validity of the entire verdict, including liability and the $4 million in non-economic damages.[11]

## III. Conclusion

In a reasoned order, the district judge found that the trial over which he presided and which he observed directly was not "a fair trial." We have reviewed the record, and it supports the district court's decision. In addition, we know that review of the cold record on appeal is not the same thing as being at the trial and

---

[11]We see the jury's award of excessive damages as proof that Plaintiff's counsel's misconduct probably influenced the jury. This case was one in which liability was highly contested. We think it is not possible to say that the misconduct influenced the amount of damages but probably did not influence the verdict on liability.

We note that Defendants (in addition to a separate motion for new trial on damages) sought a new trial "on all issues," which we -- as the district court did -- readily understand to include the issue of liability; we note also that Defendants pointed to the award of excessive damages as proof that Plaintiff's counsel's misconduct tainted the "proceedings," which we -- as the district judge did -- readily understand to mean the entire trial, including the verdict on liability.

14

observing the subtleties of tone and of demeanor for not just the speaker, but the listeners. The trial judge has the advantage; and given that the realities of a trial involve imponderables, Rule 59 (even in the light of Rule 61) is intended to allow that advantage to act for substantial justice. We cannot say the district court abused its discretion by deciding that the circumstances warranted a new trial. Accordingly, we affirm the grant of a new trial for Trooper Hernandez. We reverse the grant of judgment as a matter of law for Sgt. Tierney, but conclude that Sgt. Tierney is entitled to a new trial on the same grounds as Trooper Hernandez.

REVERSED in part, AFFIRMED in part, and REMANDED.

BARKETT, Circuit Judge, concurring in part and dissenting in part:

I agree with the majority's assessment that rational jurors could have believed Christopher's version of the events and found Tierney liable by a preponderance of the evidence, and thus I concur in the reversal of the district court's order granting judgment as a matter of law to Tierney. I also concur with the court's assessment that the jury award was excessive.

However, I dissent from the affirmation of the district court's order granting a new trial to both defendants *as to liability*. It is only the very rare case when the statements of an attorney during a trial will be so prejudicial "as to impair gravely the calm and dispassionate consideration of the case by the jury." Vineyard v. County of Murray, Ga., 990 F.2d 1207, 1213 (11th Cir.), cert. denied, 510 U.S. 1024 (1993). I do not believe this to be such a case. Furthermore, Rule 61 provides that no error in anything done or omitted by the court during trial is ground for granting a new trial or for setting aside a verdict unless it affects the substantial rights of the parties. Toward that end, we have stated that "to safeguard the constitutional right to a jury trial, the grant of a new trial which sets aside a jury verdict must undergo careful appellate scrutiny." Narcisse v. Illinois Cent. Gulf R.

16

Co., 620 F.2d 544, 546 (5th Cir. 1980).[1] "Careful appellate scrutiny" warrants reversal in this case.

First, I disagree that a new trial was warranted based on the remark of plaintiff's counsel that "[t]his is not a case about a singular blow to the head." The Appellants concede that they did not object to this argument during trial. We have repeatedly held on occasions too numerous to cite that a timely objection is necessary to bring to the district court's attention errors in counsel's closing argument. See, e.g., Woods v. Burlington Northern R.R. Co., 768 F.2d 1287, 1292 (11th Cir. 1985), rev'd on other grounds, 480 U.S. 1 (1987). This is consistent with the precedent of our sister circuits. See, e.g., Brown v. Cox, 286 F.3d 1040, 1046 (8th Cir. 2002) (affirming grant of remittur and denial of new trial where the defendant failed to object to the challenged comments made by the plaintiff's lawyer in closing); Hemmings v. Tidyman's, Inc., 285 F.3d 1174, 1193 (9th Cir. 2002) ("The federal courts erect a 'high threshold' to claims of improper closing arguments in civil cases raised for the first time after trial.").[2] The rationale for the

---

[1] Decisions by the former Fifth Circuit issued before October 1, 1981 are binding as precedent in this Circuit. See Bonner v. City of Prichard, Ala., 661 F.2d 1206, 1207 (11th Cir. 1981).

[2] Our sister circuits are in agreement that only very rarely should a new trial be granted based on improper, but unobjected to, comments during closing argument. See, e.g., Smith v. Kmart Corp., 177 F.3d 19, 26-28 (1st Cir. 1999) (stating that "[p]lain error is a 'rare species in civil litigation,' encompassing only those errors that reach the 'pinnacle of fault'" and finding that plaintiffs' counsel's improper, but unobjected-to, closing argument did not warrant reversal for a new trial (citation omitted)); Greenway v. Buffalo Hilton Hotel, 143 F.3d 47, 51 (2d Cir. 1998) (finding no plain error where plaintiff's counsel made inflammatory remarks during closing argument implying

rule requiring preservation is that allowing a party to wait to raise the error until after the negative verdict encourages that party to sit silent in the face of claimed error, a policy we have admonished. See id.

In evaluating the likelihood of prejudice from counsel's comments during closing argument, the district court, and this court on appeal, are to consider "the totality of circumstances, including the nature of the comments, their frequency, their possible relevancy to the real issues before the jury, the manner in which the parties and the court treated the comments, the strength of the case, and the verdict itself." Puerto Rico Aqueduct & Sewer Auth. v. Constructora Lluch, Inc., 169 F.3d 68, 82 (1st Cir. 1999); see also Cooper v. Firestone Tire & Rubber Co., 945 F.2d 1103, 1107 (9th Cir. 1991) (declining to find reversible error where "the alleged misconduct occurred only in the argument phase of the trial . . . the remarks were isolated rather than persistent, . . . most of counsel's comments were not objected to at trial and appellants did not move for a mistrial at the end of the argument"). The district court did not, and the majority here does not, measure the statements of

_____

that plaintiff had been fired due to anti-homosexual prejudice); Strickland v. Owens Corning, 142 F.3d 353, 358-59 (6th Cir. 1998) (finding no plain error where plaintiff's counsel made inflammatory remarks during closing argument meant to foster anti-corporate bias and wrongfully implied that the jury could award punitive damages); Manning v. Lunda Constr. Co., 953 F.2d 1090, 1092-93 (8th Cir. 1992) (finding no plain error where plaintiff's counsel wrongfully suggested to jury during closing arguments that they should use a method of calculating damages which had been rejected).

18

Christopher's counsel against this standard.[3]   The majority does not describe how "the interest of substantial justice is at stake," McWhorter v. City of Birmingham, 906 F.2d 674, 677 (11th Cir. 1990) (internal quotation marks omitted), nor how the very few words at issue here caused prejudice to Tierney and Hernandez.

This case is unlike McWhorter, the only case cited in support of the majority decision.  In McWhorter, plaintiff's counsel argued an entirely new theory of the case throughout rebuttal argument which had been expressly excluded by the court in a pretrial order.  Id.  More importantly, several times throughout closing, counsel referenced an exhibit which had been excluded, and which the jury subsequently called for during deliberations, only to be told it was not in evidence.  In McWhorter, then, it was clear that the jury actually considered and deliberated upon counsel's improper comments during closing.  In contrast, Christopher's trial counsel made a single stray remark during closing arguments, which was not clearly barred by the pretrial order[4] and to which the defendants elected not to object at the

---

[3]I acknowledge that we do not review a district court's order granting a new trial for plain error, see Maj. Op. at 10 n.4.  I am not suggesting that we review the district court's order for plain error. To the contrary, I dissent because I believe the Majority to be radically broadening the district court's power to grant a new trial based on essentially any rationale, including those not raised by the parties, and without any evidence tying the comments of counsel to actual prejudice.  This holding is inconsistent with the Federal Rules of Civil Procedure and with our Circuit's precedent in reviewing a district court's order granting a new trial based on arguments not raised during trial. See, e.g.,  Shelby Ins. Co. v. Stocks, 82 F.3d 1030 (11th Cir. 1996).

[4] Counsel's remarks at closing plainly did not violate the district court's qualified immunity order.  Examined in context, counsel's statement "they are . . . making it seem that we have to prove a specific blow to a specific area of the body and that is not true," simply explained what was

time.  There is nothing in the record here suggesting that the jury considered the remark "[t]his is not a case about a singular blow to the head" at all in its deliberations.  Indeed, the majority concedes that there was sufficient evidence presented that a rational jury could conclude that Tierney struck Christopher on the head.  Majority Op. at 7.  It was therefore an abuse of discretion for the district court to order a new trial.

In fact, we have held that the admission of far more egregious statements than the one at issue here did <u>not</u> warrant a new trial.  <u>See, e.g.</u>, <u>Brough</u>, 297 F.3d at 1179-80 (holding no plain error where plaintiff's counsel made numerous "improper" remarks during closing argument which "were prejudicial and should have been excluded" regarding defendant's enormous income relative to plaintiff because they did not seriously affect the fairness of the proceeding); <u>Vineyard</u>, 990 F.2d at 1213-14 (finding no plain error where plaintiff's counsel's "egregiously improper arguments to the jury" asked jury to "send a message" to the sheriff regarding excessive force); <u>Oxford Furniture</u>, 984 F.2d at 1128-29 (finding no plain

---

essentially Christopher's *res ipsa loquitur* theory of the case – that is, Christopher's argument that he did not need to demonstrate that a specific officer hit him in a specific spot on the back of the head so long as he could demonstrate that but for a blow to the head which necessarily came from the police officers in the room, he would not have suffered his injuries.  The closing argument *did not* comment on the conduct for which the officers received immunity – namely, their use of excessive force in rolling him off the bed onto the floor, hurting him while handcuffing him, and dragging him from the bedroom to the living room.  Because the closing argument fully complied with the district court's qualified immunity order, it was an abuse of discretion to grant a new trial on the basis of a single sentence spoken by counsel and removed from its context.

20

error where counsel's closing argument included statements for which there was no supporting evidence, outright misstatements of the evidence, expressions of counsel's personal opinions, comments on counsel's own involvement with Oxford and Oxford's witnesses, appeals to local prejudice against out-of-state corporations, and improper references to loss of jobs and taxes). As we noted in Oxford Furniture, if the remarks had been prejudicial, defense counsel likely would have objected at the time, which in both this case and in Oxford Furniture, the defendants did not do. 984 F.2d at 1129 (finding no prejudice where defense counsel "while now claiming severe prejudice because of the argument, made no attempt to object to the arguments when they were made"); see also F.D.I.C. v. Stahl, 89 F.3d 1510, 1519-20 (11th Cir. 1996) (finding no substantial prejudice based in part on defendants' failure to object at the time).

Furthermore, we are obligated to review counsel's remarks in the context of the entire trial, including the jury instructions and any corrective measures applied by the trial court. See Vineyard, 990 F.2d at 1213 (analyzing whether, in light of "the entire argument, the context of the remarks, the objection raised, and the curative instruction," the statement at issue was "such as to impair gravely the calm and dispassionate consideration of the case by the jury" (internal quotation marks omitted)). The district court in this case expressly instructed the jury at the close of

21

evidence that they were to consider Christopher's claim "that one of the defendants struck him on the head." The court instructed the jury that "[t]he mere fact that the evidence in this case may show that there was some contact between the plaintiff and the defendants would not be sufficient by itself to prove that the defendants violated the plaintiff's constitutional rights." The majority opinion suggests that "no specifically curative instruction was given to the jury to disregard Plaintiff's improper argument," Maj. Op. At 12 n.8 – of course, this was the case precisely because the Defendants never objected to Plaintiff's comments during closing argument and because the district court failed to observe any problem with those comments during the course of the trial. Nevertheless, the district court's jury instructions properly stated the scope of the Plaintiff's claims and were thus sufficiently curative to prevent any minor prejudice which might have resulted from the single remark of counsel over the course of a five-day trial.

I also disagree that counsel's other remarks, which "buttress" the court's opinion, see Majority Op. at 12, were substantially prejudicial to Tierney and Hernandez. With respect to the asserted "series of statements that arguably implied to the jury that the State of Florida was underwriting the costs of the defense," Majority Op. at 12, having searched the record, I disagree that the record can be so construed. It is clear from the record that the jury was never told that the Attorney

22

General had paid for the expert's testimony. Indeed, the only counsel who tied the Attorney General to the payment of the expert witness was the defense.[5] Such a self-inflicted error cannot be the basis for the award of a new trial. "It is a cardinal rule of appellate review that a party may not challenge as error a ruling or other trial proceeding invited by that party." Birmingham Steel Corp. v. Tenn. Valley Auth., 353 F.3d 1331, 1341 n.5 (11th Cir. 2003) (quoting Ford ex rel. Estate of Ford v. Garcia, 289 F.3d 1283, 1293-94 (11th Cir. 2002)); see also United States v. Lewis, 524 F.2d 991, 992 (5th Cir. 1975), cert. denied,425 U.S. 938 (1976) ("A defendant cannot complain on appeal of alleged errors invited or induced by himself, particularly where, as here, it is not clear that the defendant was prejudiced thereby.").

Nor were the defendants prejudiced by two phrases spoken by Christopher's counsel during closing argument referencing "police brutality" and "differences of

---

[5] During the cross-examination of the defendants' expert causation witness, Christopher's counsel asked the expert a series of questions regarding who paid for his services – certainly a legitimate line of inquiry. Defendants objected, and the court sustained the objection on the basis that it was already established on direct examination that Defendants' counsel had paid the expert. Christopher's counsel then moved on to ask the expert about correspondence he had received from the Office of the Attorney General – an entirely legitimate inquiry since it was a document upon which the expert had relied in rendering his expert opinion. At that point *Defendant's counsel* objected, apparently not realizing that Christopher's counsel was moving on to another line of questions; *Defendant's counsel* stated that he was objecting to the questions regarding the correspondence from the Attorney General because the court had just sustained an objection as to the source of payment. There was no other mention of the State of Florida providing payment for the expert's services or for the defense at any point in the trial, and the jury was never told that the Attorney General paid for the expert's services or the defense.

people." No fair reading of the record suggests these remarks were improper, much less prejudicial.[6] The district court twice denied contemporaneous objections to the statements as improper, and three weeks after trial found that these remarks might have improperly implied a motive of racial prejudice for the alleged policy brutality. Having reviewed the record, I can find not a single mention of racial prejudice anywhere in the record, including throughout closing argument. The district court's finding, months after trial, that these comments were racially charged has no basis in the record. Rather, I believe we should defer to the district court's assessment of the comments at the time and in the context in which they were made, which was that the comments were proper and that Defendant's objections to them should be overruled. Accordingly, I believe that the district court abused its discretion in ordering a new trial for Hernandez on the basis of isolated remarks which were only arguably improper and were certainly not so

---

[6]Christopher's counsel stated:

> [T]here was one question I think I need to address, and the question is, why? I think it's a good question. . . . It's a question that sociologists and psychologists have been debating for hundreds of years. Why does one human being commit an act of violence against another? What is it that motivates an act of violence? What degree and combination of emotions causes violence? Why do policy officers . . . that may be perfectly fine at home, good husbands, fathers, whatever, do they commit acts of violence? Is there such a thing as police brutality? Is there such a thing as unreasonable police force? Is it motivated by the differences of people?

It was at that point that Defendants' counsel interrupted and objected at sidebar that the comment "differences between people" was "playing upon racial prejudice," an objection that the district court summarily denied.

prejudicial "as to impair gravely the calm and dispassionate consideration of the case by the jury." Vineyard, 990 F.2d at 1213.

The final basis the court suggests for awarding a new trial is the excessive verdict awarded by the jury, which Christopher concedes exceeded the proof at trial. Where the jury renders a proper ruling as to liability, the appropriate remedy is to remand the case to the district court for either remittitur, see Goldstein v. Manhattan Indus., Inc., 758 F.2d 1435, 1448 (11th Cir. 1985), or for a new trial exclusively as to the amount of damages, see Parker v. Scrap Metal Processors, Inc., 386 F.3d 993, 1018 (11th Cir. 2004) (reversing excessive jury award and remanding for new trial solely as to damages); Overseas Private Inv. Corp. v. Metro. Dade County, 47 F.3d 1111, 1116 (11th Cir. 1995) ("Because the liability issues were properly and clearly decided by the jury, the remedy in this instance is to remand the case to the district court for a new trial on the amount of damages only."); see also Federal Rule of Civil Procedure 59(a) (providing that a new trial may be granted "on all or part of the issues"). These rules are in keeping with the principle that "'courts are not free to reweigh the evidence and set aside the jury verdict merely because the jury could have drawn different inferences or conclusions or because judges feel that other results are more reasonable.'" Narcisse, 620 F.2d at 548 (quoting Tennant v. Peoria & Pekin Union Railway Co., 321 U.S. 29, 35 (1944)).

Christopher does not dispute that the verdict was excessive; however, he argues that the proper remedy was a simple remittitur, rather than the grant of an entire new trial. This is in accordance with the relief sought below *by the Appellants*, who contested a portion of the jury's award, but did not argue that it warranted a new trial. In fact, nowhere in their Renewed Motion for Judgement as a Matter of Law or for New Trial (DE 349) did the Appellants argue that the excessive jury verdict justified a new trial as to liability. The jury verdict is not mentioned at all in the motion for a new trial. Appellants filed separately a Motion for Remittitur or New Trial on Damages (DE 350), which also did not request a new trial as to liability due to excessive verdict, but rather stated that the "Defendants are entitled to a remittitur or to a new trial as to the jury's award of $225,000.00 for past medical and custodial care costs and $2,500,000.00 for future medical and custodial care costs"

The majority suggests that the Appellants sought a new trial "on all issues" within the district court. It is true that Appellants sought a new trial on all issues, but they simply did not argue the legal theory presented on appeal, and on which the majority bases its opinion – i.e., that the excessive verdict is what justified a new trial "on all issues." The defendants waived any argument that Hernandez or Tierney is entitled to a new trial on the basis of an excessive verdict. See

26

Stavropoulos v. Firestone, 361 F.3d 610, 616 n. 6 (11th Cir. 2004), cert. denied, 125 S. Ct. 1850 (2005).  It has been the law of this Circuit that parties may not seek a new trial on appeal for reasons not asserted before the district court.  Twiss v. Kury, 25 F.3d 1551, 1556 (11th Cir. 1994) ("[W]e generally will not consider a legal theory that was not presented to the district court . . . [unless] the issue involves a pure question of law and if the refusal to consider it would result in a miscarriage of justice.").  The majority states no basis for its departure from this well-ensconced principle of law in evaluating the Appellants' argument, which does not involve a pure question of law but rather the application of law to facts.

Because the jury correctly assessed liability in the case but inaccurately assessed damages, I believe that the appropriate solution under these circumstances is to remand to the district court, leaving it the district court's discretion to determine whether remittitur or a new trial as to damages is the more appropriate course of action.  See, e.g., Goldstein, 758 F.2d at 1448 ("In general, a remittitur order reducing a jury's award to the outer limit of the proof is the appropriate remedy where the jury's damage award exceeds the amount established by the evidence."); Parker, 386 F.3d at 1018 (holding that where error in assessing damages "resulted in a miscarriage of justice and seriously affected the fairness of

the judicial proceedings," the proper remedy was to remand for a new trial on damages only).

In conclusion, none of the statements by Christopher's trial counsel were substantially prejudicial to the Defendants, and I believe that to hold otherwise is inconsistent with the stringent nature of our review in these circumstances. Accordingly, I would reverse the district court's order granting JMOL to Tierney, reverse the district court's order granting a new trial to Hernandez, and remand for the district court to either issue a remittitur or hold a new trial solely to assess damages. For these reasons, I respectfully dissent from the court's opinion affirming the grant of a new trial to both defendants and concur with the reversal of the court's order granting JMOL to Tierney.